UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DILESH SHARMA,<br><br>Defendants. | No. 2:17-cr-00055-TLN<br><br>**ORDER** |

This matter is before the Court for factual findings after an evidentiary hearing that was held in June 2021. The Court ordered the parties to file post-hearing briefing. Defendant Dilesh Sharma ("Defendant") filed an initial brief (ECF No. 134) and a supplemental brief (ECF No. 168). The Government filed responses to both (ECF Nos. 135, 174), and Defendant filed replies (ECF Nos. 138, 185). For the reasons set forth below, the Court concludes N.V. is credible and the incidents she testified about occurred.

///

///

///

///

///

///

### I.   FACTUAL AND PROCEDURAL BACKGROUND

On August 29, 2019, Defendant pleaded guilty to the following three counts alleged in the second superseding indictment: (1) attempted online enticement of a minor for sexual purposes in violation of 18 U.S.C. § 2422(b); (2) distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2); and (3) receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2). (ECF No. 72.) A factual basis was submitted in support of the open plea. (ECF No. 75.)

The Presentence Report ("PSR"), filed October 15, 2020, includes relevant conduct about Defendant sexually abusing his niece beginning when she was 11 or 12 years old. (ECF No. 97 at 7.) The PSR used this relevant conduct to increase Defendant's guideline calculation in two ways. First, the PSR increased the adjusted offense level by five under U.S.S.G. § 2G2.2(b)(5), which provides for a five-level increase "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." (*Id.* at 9.) Second, the PSR increased the adjusted offense level from 42 to 47 under U.S.S.G. § 4B1.5(b)(1), which states in relevant part, "[i]n any case in which the defendant's instant offense of conviction is a covered sex crime, neither § 4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct: (1) The offense level shall be 5 plus the offense level determined under Chapters Two and Three." (*Id.* at 10.)

Defendant denies that he sexually abused his niece. Therefore, on June 7, 2021 and June 10, 2021, the Court held an evidentiary hearing regarding the factual allegations at issue. During the evidentiary hearing, the Court heard testimony from Defendant's niece ("N.V."), FBI Agent Scott Schofield, Noemi May (N.V.'s grandmother), and Eugenio Viana (N.V.'s brother). At the conclusion of the hearing, the Court ordered the parties to submit post-hearing briefs. After the briefs were filed, Defendant twice requested new counsel. The Court granted Defendant's requests. At the request of the parties, the Court set a briefing scheduling for supplemental briefing. The matter is now fully briefed.

///

///

///

**II.     ANALYSIS**

     A.     <u>Standard of Proof</u>

At the outset, Defendant argues the Government must prove the facts underlying the enhancements by clear and convincing evidence because applying the enhancements will have a disproportionate impact on Defendant's sentence. (ECF No. 134 at 2–4.) In opposition, the Government argues "[a]lthough preponderance is the applicable standard, . . . the evidence submitted satisfies the clear and convincing standard of proof." (ECF No. 135 at 24.)

"[T]he government bears the burden of proof on the facts underlying a sentence enhancement." *United States v. Zolp*, 479 F.3d 715, 718 (9th Cir. 2007). "As 'a general rule,' factual findings underlying a sentencing enhancement need only be found by a preponderance of the evidence." *United States v. Parlor*, 2 F.4th 807, 816 (9th Cir. 2021) (quoting *United States v. Valle*, 940 F.3d 473, 479 (9th Cir. 2019)). However, if a sentencing enhancement has an extremely disproportionate impact on the sentence, "due process may require the government to demonstrate facts underlying disputed enhancements by clear and convincing evidence." *United States v. Lonich*, 23 F.4th 881, 910 (9th Cir. 2022) (citations omitted).

The Ninth Circuit has set forth six non-exhaustive factors to consider in determining whether the Government must meet the clear and convincing standard. *Id.* Those factors are:

> (1) whether the enhanced sentence falls within the maximum sentence for the crime alleged in the indictment; (2) whether the enhanced sentence negates the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment; (3) whether the facts offered in support of the enhancement create new offenses requiring separate punishment; (4) whether the increase in sentence is based on the extent of a conspiracy; (5) whether the increase in the number of offense levels is less than or equal to four; and (6) whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence.

*Id.* at 910–11 (quoting *United States v. Jordan*, 256 F.3d 922, 928 (9th Cir. 2001)) (alterations and internal quotation marks omitted). The Ninth Circuit has "repeatedly recognized that . . . cases commonly turn on the last two factors: whether the enhanced sentence is four or more offense levels higher (factor 5) and more than double the initial sentencing range (factor 6)." *Id.*

at 911; *see also Valle*, 940 F.3d at 479 (explaining that courts often rely "on only these last two factors"). Because the Court concludes factors 5 and 6 are dispositive, only those factors are addressed herein.

As to factor 5, if the Court applies both 5-level enhancements, Defendant's total offense level would be 43. If the Court does not apply the enhancements, Defendant's total offense level would be 37. Because the increase in offense level is greater than four, factor 5 weighs in favor of applying a heightened standard of proof. As to factor 6, Defendant's guideline range without the enhancements would be 210 to 262 months — which equates to approximately 17.5 to 22 years.[1] With the enhancements, the guideline range would be life. Although the exact duration of a life sentence is unknowable, it is possible that a life sentence for Defendant — who is only 50 years old — could equate to more than double his sentence without the enhancements. Therefore, factor 6 also weighs in favor of applying a heightened standard.

For these reasons and absent further argument on this issue, the Court concludes applying the enhancements will have a disproportionate impact on Defendant's sentence. Therefore, the Government must prove the facts underlying the enhancements by clear and convincing evidence, which requires "an abiding conviction that the truth of [the] factual contentions" at issue is "highly probable." *Mondaca-Vega v. Lynch*, 808 F.3d 413, 422 (9th Cir. 2015) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)); *see Jordan*, 256 F.3d at 930 (under a clear and convincing standard, the government must "prove [its] case to a higher probability than is required by the preponderance-of-the-evidence standard") (citation omitted).

B.   Parties' Arguments

The Court has read and considered all the extensive briefing in this case. (ECF Nos. 134, 135, 138, 168, 174, 185.) The Court will summarize only the parties' main arguments herein.

In Defendant's original brief, he argues N.V. was an unreliable, inconsistent, and untruthful witness. (ECF No. 134 at 4–7.) Defendant emphasizes that N.V. received some type

---

[1] Defendant argues the guideline range without the enhancements would be 168 to 210 months. (ECF No. 134 at 2; ECF No. 138 at 2.) Defendant fails to explain how he arrived at this range, and it appears to be incorrect based on the Court's calculations.

of documentation that included the facts of the case, and her subsequent statements suggest she was influenced by the documentation. (*Id.*) Defendant also contends the Government conducted an improper investigation, which included several unrecorded conversations with N.V. wherein she changed her story about whether oral copulation occurred. (*Id.* at 5–10.) In addition, Defendant argues many of N.V.'s allegations are implausible, such as her story that Defendant climbed up the loft bed she shared with her brother and examined her "like a gynecologist" without shaking the bed, waking her brother, or making any noise. (*Id*. at 9–10.) As another example, Defendant points out that N.V. recalled no details about alleged oral copulation and testified for the first time at the evidentiary hearing that she remembered the incident because of Defendant's breath and his necklace on her face, which Defendant argues does not make logical sense. (*Id.* at 10.) Defendant also stresses that N.V. chose to stay in the home despite having many opportunities to speak out, move out, or leave. (*Id.*)

Further, Defendant takes issue with the lack of corroborating evidence — there was no evidence anyone ever saw or heard Defendant engage in conduct consistent with N.V.'s claims. (*Id.* at 10–11.) Defendant argues N.V. lied because she was angry at Defendant, jealous of her brother, and wanted to impress law enforcement. (*Id.* at 11.) As for Defendant's chat messages with others, Defendant argues those were a form of fantasizing and there is no evidence that Defendant engaged in such conduct in real life until he met up with Agent Schofield. (*Id.* at 12.) Lastly, Defendant argues the alleged sexual abuse is not proper relevant conduct because it did not occur during the commission of the underlying offense. (*Id.* at 13–16.) In sum, Defendant argues the Court should not apply the enhancements at issue because there is insufficient evidence that the alleged conduct supporting those enhancements occurred. (*Id.* at 18.)

In opposition to Defendant's original brief, the Government argues the Court has already found the alleged conduct can be considered as relevant conduct.[2] (ECF No. 135 at 6.) The Government argues N.V. provided credible testimony that the following acts of sexual abuse

---

[2] The Court agrees with the Government. The Court addressed this argument at length at the beginning of the evidentiary hearing and ruled these allegations could be considered as relevant conduct. (ECF No. 128 at 8–11.) As such, the Court will not address this argument further in this Order.

occurred while she was a minor: (1) Defendant touched N.V.'s vagina; (2) Defendant performed oral sex on N.V.; and (3) N.V. touched Defendant's erect penis. (*Id.* at 8–10.) The Government argues that in addition to those incidents, N.V. also described other times Defendant harassed her in a sexual manner despite her age and testified that Defendant tried to justify the abuse by telling her it was normal. (*Id.* at 10–11.) The Government states that N.V.'s initial disclosure and subsequent interviews were consistent with her testimony and any inconsistencies resulted from the interviewer's confusing verbiage. (*Id.* at 11–13.) The Government argues that the documentation N.V. supposedly received did not influence her testimony, defense witnesses corroborated N.V.'s timeline and other details of N.V.'s testimony, and defense witnesses failed to rebut that the incidents occurred. (*Id.* at 13–17.)

Moreover, the Government emphasizes that Defendant's emails and chats with strangers discussed his sexual interest in his niece, discussed his interest in girls the same age and with the same physical characteristics as N.V., and discussed his interest in the specific acts performed on N.V. (*Id.* at 18–21.) The Government argues Defendant's portrayal of N.V. as someone with bias toward Defendant is not supported by the record and Defendant's other attempts to impeach N.V. are meritless. (*Id.* at 21–23.) Lastly, the Government argues academic literature acknowledges that victim disclosure is complex and waiting to disclose to law enforcement until after the arrest of the perpetrator or when the victim becomes an adult is not unusual.[3] (*Id.* at 22.) In sum, the Government requests the Court find N.V. to be credible and that the incidents of sexual abuse she disclosed occurred. (*Id.* at 26.)

In Defendant's supplemental brief, he raises many of the same arguments from his original brief. The Court will not address those arguments again. In addition, Defendant argues Agent Schofield's failure to record all but one of his conversations with N.V. impeded Defendant's ability to impeach N.V. (ECF No. 168 at 11–12.) Defendant also argues Agent Schofield's interviews failed to clarify N.V.'s previous statements and raised four new claims

---

[3] In reply, Defendant contests the Government's citation to academic literature because the Government did not call an expert witness on the issue. (ECF No. 138 at 8.) The Court need not address Defendant's argument because it does not rely on the Government's academic literature argument to arrive at its ruling.

N.V. had never mentioned: (1) Defendant lifted N.V.'s shirt to check her breast development; (2) Defendant touched N.V.'s breasts when the two were at Defendant's rental property; (3) there was a disrobing incident which was interrupted when the garage door opened; and (4) Defendant made N.V. touch his erect penis. (*Id.* at 12–13.) Defendant proceeds to argue N.V.'s claims are implausible, unsupported by sufficient detail or evidence, contradicted by her other statements (including an attempt to recant), and influenced by outside sources. (*Id.* at 14–38.)

In response to Defendant's supplemental briefing, the Government argues Defendant relies on evidence not presented during the hearing and documents not in the record. (ECF No. 174 at 5.) The Government argues that to the extent Defendant's supplemental arguments rely on extra-record evidence, the Court should reject them or, alternatively, consider rebuttal evidence that exposes flaws in Defendant's arguments. (*Id.* at 11.) The Government argues N.V.'s initial disclosures were not fabricated, and there is no evidence that she received the search warrant affidavit, complaint, or chat logs. (*Id.* at 12–14.) The Government further argues N.V.'s statements were credible (especially considering the complex nature of abuse disclosures) and Agent Schofield adequately documented his communications with N.V. (*Id.* at 14–21.)

### C.     Analysis

The Ninth Circuit's Model Criminal Jury Instructions set forth the following factors for evaluating the credibility of a witness:

(1) the witness's opportunity and ability to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.[4]

Ninth Cir. Model Crim. Jury Instr. 1.7, 6.9 (2022 ed.).

After evaluating N.V.'s testimony considering these factors, the Court finds N.V. to be a credible witness. The evidentiary hearing took place in June 2021, when N.V. was 24 years old. (ECF No. 128 at 35.) N.V. testified that she has participated in therapy since 2017 and therapy has helped her remember things she had suppressed. (*Id.* at 120, 153.)

N.V. testified that she lived in Defendant's house two times. (*Id.* at 23–24.) The first time was when she was in fourth grade to the end of seventh grade. (*Id.*) The second time was when she was in tenth grade until her junior year of college. (*Id.* at 126.) N.V. testified that Defendant started sexually abusing her before she moved into the house the first time. (*Id.* at 26.) N.V. testified that the first incident she was spending the night at Defendant's house and found him hovering over her while her brother was sleeping next to her in a loft bed. (*Id.*) N.V. testified she decided to pretend that she was asleep because she did not know what was going on. (*Id.*) N.V. testified that when she woke up, she saw that Defendant had her pajama bottoms down and was checking her genital area like a gynecologist and inserted his finger in her vagina. (*Id.* at 27.)

N.V. further testified that the following incidents occurred during the first time that she lived in Defendant's house. N.V. testified that Defendant asked her to undress on multiple occasions (*id.* at 28, 35) and dry humped her from behind on another occasion (*id.* at 29). N.V. also testified about an incident on the couch where she was lying next to Defendant on a couch, and he gestured for her to touch his penis. (*Id.* at 30.) She testified that as she touched it, he stated it was already hard. (*Id.*) N.V. described another incident that took place in her bedroom one afternoon when Defendant asked her to get undressed and put his mouth on her vagina. (*Id.* at 34–35.) She testified that she remembers this incident occurred because she has "a picture in [her] head with [Defendant's] chain dangling in [her] face as well as the smell on his breath." (*Id.*) She testified this was the only time Defendant performed oral sex on her. (*Id.* at 35.) N.V.

---

[4] The parties generally agree these factors can be used to determine credibility. (ECF No. 134 at 4; ECF No. 135 at 7.)

also testified about another incident when Defendant kissed her on the lips. (*Id.* at 30.) N.V. could not remember if she lived at Defendant's house at the time, but she remembered that it occurred before she was in middle school. (*Id.*)

The Court finds N.V.'s testimony is believable based on her opportunity and ability to see, hear, and know the things testified to, her manner while testifying, and the reasonableness of her testimony in light of all the evidence, such as chat logs wherein Defendant expressed a sexual interest in: (1) his niece; (2) girls approximately the same age and with the same physical characteristics as N.V. when the abuse occurred; and (3) the types of acts N.V. alleges occurred.

Further, N.V.'s testimony is consistent with her initial interview in several key respects. During the initial interview on March 31, 2017, N.V. stated that she remembered waking up sometimes at night with Defendant on top of her and her undergarments pulled down when she was 11 or 12 years old. (Gov't Exh. 24 at 03:00–03:40.) She stated she never really thought anything of it, and she went along with it as she grew up because Defendant manipulated her by saying he was showing his love as a father figure. (*Id.* at 03:40–04:15.) She also stated there was no intercourse, but that Defendant did "oral" on her once. (*Id.* at 05:25–05:50.) Although Defendant points out some inconsistencies between the initial interview and her hearing testimony, such inconsistencies are understandable as N.V. explained during the initial interview that she suppressed her memories. (*Id.* at 05:55–6:05.)

Defendant's other efforts to attack N.V.'s testimony are unavailing. Defendant relies on N.V.'s statement to Deputy District Attorney Chang during a July 27, 2017, interview, in which she appeared to state that no oral copulation occurred. (Dft Exh. D at 58–60.) However, N.V. testified at the evidentiary hearing that she was confused during that interview and now has a better understanding of the definition of oral copulation. (ECF No. 128 at 184.) At the hearing, N.V. clearly testified that Defendant did put his mouth on her vagina. (*Id.* at 181.) The Court notes N.V. initially testified the oral copulation took place the first time she lived at Defendant's home (*id.* at 34–35) and later testified it took place the second time she lived at Defendant's home (*id.* at 181). Although this apparent inconsistency makes it unclear whether the incident occurred while N.V. was a minor, it does not lessen her credibility. Despite N.V.'s imperfect memory, the

1  Court finds she provided credible testimony about specific instances that occurred.

2      Defendant also fails to persuade the Court that N.V.'s testimony was based on outside
3  sources.  For example, although Defendant argues N.V. was influenced by a document she
4  received about the underlying facts of this case, N.V. testified that she did not base any of her
5  statements either to law enforcement or in court on that document.  (*Id.* at 167.)  Additionally,
6  Defendant fails to persuade the Court that N.V. was motivated by bias or prejudice, that she had a
7  significant interest in the outcome of the case, or that her testimony was implausible.  N.V.
8  repeatedly testified that her goal in testifying was to speak the truth, and this Court, who sat
9  through the evidentiary hearing, believes her.  (*Id.* at 59, 101.)

10     As for the testimony of N.V.'s grandmother and brother, the Court concludes that neither
11 undermines N.V.'s testimony.  To the extent Defendant relies on the grandmother's testimony to
12 show that Defendant would not have had the opportunity to commit the alleged acts, the Court
13 finds this unlikely, especially because the incidents seem to have occurred at discrete moments of
14 opportunity.  To the extent the brother contradicted portions of N.V.'s testimony, those
15 contradictions are tangential to the alleged conduct.  For example, whether N.V's brother bought
16 her cleats does not make it significantly more or less likely that the abuse occurred.  Further, as
17 this Court observed N.V.'s brother's demeanor and manner of testifying, the Court finds N.V.'s
18 brother has his own biases against his sister and in favor of Defendant.  (*See* ECF No. 129 at
19 122.)  These biases undermine the veracity of his testimony.

20     **III.**    **CONCLUSION**

21     For the foregoing reasons, the Court concludes the Government has established by clear
22 and convincing evidence that N.V. is credible and that the incidents she testified about, which
23 have been discussed at length in this Order, occurred.  If the parties have further legal arguments
24 regarding whether the sentencing enhancements related to these findings should apply, the parties
25 should raise such arguments in their sentencing memorandum prior to sentencing.

26     IT IS SO ORDERED.

27 //

28 //

**DATE:  February 7, 2023**

_____
Troy L. Nunley
United States District Judge